OPINION OF THE COURT
Frank J. LaBuda, J.
The petitioner, who is the widow of the decedent and the general guardian of her three children,[1] requests approval of the court to withdraw from the funds of the children monies to reimburse the petitioner for expenses incurred for the children’s support during the past year 1997, legal expenses for the present application, guardianship bonding expenses, income taxes and other disbursements made on behalf of the children with respect to the life insurance proceeds which they received and which proceeds have been invested by petitioner, as guardian of their property, pursuant to SCPA article 17 and EPTL 11-2.3. The petitioner maintains that the total 1997 annual expenses for the Bilick family was $139,630 and the pro rata share for the three children totals $85,210.[2]
On September 4, 1997, the Surrogate appointed a guardian ad litem for the three wards in the present application. On January 8, 1998, the Surrogate held a fact-finding hearing wherein petitioner and Rita Klafter, M.S., a family therapist, testified in support of the application for a limited invasion of the children’s interest income. Following the hearing, the guardian ad litem submitted a written report to the Surrogate.
The guardian ad litem’s report[3] recommends only a limited invasion of interest income for the following: “bonding of the investments on behalf of the children in the amount of $7,273.00 pursuant to SCPA Article 17 * * * income tax paid by the Guardian which is attributed to the children’s funds * * * the use of the interest and income of the ward, Summer Maria Rose Bilick, as she is 14 years of age and consents to the instant application * * * the future use of additional funds limited to the child or children who are old enough to consent, *295 i.e., as each child becomes 14 years of age, they, too, may consent to utilize their funds * * * however, should the Court find that it is more appropriate to take equal amounts from the wards, the contribution from Joshua Jeremy Latham Bilick should be proportional, if at all, as he received substantially less money * * * under no circumstances should any principal funds of any child be utilized * * * and, the amount taken, if taken at all, should be minimal as it appears the Petitioner can make the household budget without the use of the children’s funds and the basis of need should be reported to the Court annually. The Guardian Ad Litem further recommends reimbursement for legal fees for establishing the guardianship for the instant application be left to the sole discretion of the Surrogate.” (Guardian ad litem’s report.)
Petitioner guardian specifically seeks permission to annually invade: Joshua’s interest income in the amount of $7,500 annually, Matthew’s interest income in the amount of $15,000 to $20,000 annually, and Summer’s interest income in the amount of $20,000.[4]
Petitioner maintains that utilizing between $40,000 and $50,000 of the infants’ funds together with the infants’ Social Security would make available approximately one half of the annual household budget with the remaining balance being paid by the petitioner.
The court’s consideration of the instant application begins with SCPA article 17. More particularly, SCPA 1713 provides the guidelines for administration of an infant’s property. SCPA 1713 permits the guardian of an infant’s property to petition the court to utilize the infant’s funds for the support and education of the infant, pursuant to what is “reasonable, proper and just under the circumstances, taking into consideration the liability, if any, of any other person to pay such expenses, his financial ability to pay and all other relevant facts. The payment may be made from income or principal.” (See, SCPA 1713 [2].)
The question of what is “reasonable and proper” is left to the Surrogate’s judicial scrutiny of the circumstances of the instant case. An analogy to relevant Family Court developments is helpful.
It is not disputed that in New York, it is a parent’s obligation to support a minor child. Nonetheless, section 413 of the *296 Family Court Act addresses the parent’s obligation of support which takes into consideration, among other factors, “[t]he financial resources * * * of the child.” (Family Ct Act § 413 [1] [f| [1] [emphasis added].)
The very same language regarding child support was incorporated into Domestic Relations Law § 236 for the purpose of determining the obligation of child support in matrimonial actions, and has now been carried into Domestic Relations Law § 240 (1-b) (f). Here again, the financial resources of the child may be taken into consideration in determining the obligation of support. (See, Domestic Relations Law § 240 [1-b] [f].)
Section 240 (1-b) (f) of the Domestic Relations Law also goes on to require consideration of the physical and emotional health of the child, standard of living, and any other factors the court determines are relevant.[5]
Besharov, 1984 Supplementary Practice Commentaries (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 413, at 32-33), regarding the 1983 amendment which legislated the infant’s means consideration, distinguish the well-established rule that “a parent has the obligation to support the children even though they [the children] have resources of their own”. (Matter of Kummer, 93 AD2d 135, 145 [2d Dept 1983].) The Commentaries provide that “subsequent to this decision, section 413 was amended to require the court to consider, among other things, ‘the financial resources * * * of the child.’ * * * Nevertheless, it seems clear that the earlier total disregard of the child’s resources, and, sometimes, wealth, is no longer allowable.” (Besharov, op. cit., at 33.)
The parent’s duty of support is measured by the children’s needs in relation to their ability to provide support. (Robbins v Rubin, 42 AD2d 560 [1st Dept 1973].) However, “if a surviving parent lacks the means to fully pay for the support of his or her children, then the separate estate of the children should bear some of the burden of their support.” (Matter of Kummer, supra, at 145.)
In Matter of Polinsky (33 Misc 2d 1002, 1005 [1962]), the Surrogate of Kings County permitted the limited invasion of income by the mother/guardian although the court found that, “neither of her petitions sets forth any facts from which the court would be justified in determining that the mother is not of sufficient financial means to bear the cost of maintenance and education of her children imposed on her by law so as to *297 warrant the exercise of the court’s discretion to permit invasion of corpus.” Therefore, the court only permitted a limited withdrawal from the income of the infant’s funds by the guardian even though the mother was of sufficient means to support her children. However, the general rule does not favor withdrawal of funds for support from the corpus of an infant’s funds, absent unusual circumstances, and discretionary power to permit the general guardian to withdraw funds either from income or corpus is to be exercised with due care.
As in Matter of Polinsky (supra), the petitioner in the instant proceeding has failed to set forth “facts from which the court would be justified in determining that the mother/guardian is not of sufficient financial means to bear the cost of maintenance and education of her children imposed on her by law so as to warrant the exercise of the court’s discretion to permit invasion of the corpus.” This court finds that a limited invasion of the income only of the children’s funds is permissible under the circumstances presented here. This will afford the mother the opportunity to maintain her family’s financial security, with the standard of living and education that the children have enjoyed, and also to enable her to fulfill her full-time obligation as mother and single parent which is admittedly in the best interest of the children and the apparent decision of the decedent[6] as they have experienced a great loss of one parent already.
In the instant matter, the court is convinced based upon the considered testimony of the family therapist that the emotional and physical health of the children are best served by maintaining them not only in the current abode and life style, but also allowing their mother/guardian to continue her nurturing and guiding role as head of the household without unnecessary and needless financial and emotional strain by a limited use of trust income for child support. The therapist’s report as well as her testimony explained in depth the devotion of the guardian/ mother, her unlimited assumption of responsibility and caring for her three children and the importance that this pattern of life, the head of household mother, and the like be continued for the children after the sudden and tragic death of their father. Thus, the important children’s right to expect money kept in the hands of their guardian to be intact when reaching their majority will be protected by a limited invasion of income *298 only. It is apparent to the court that each child now owns a significant amount of property and is assured an adequate growth of their principal funds by allowing only a limited invasion of interest income.
It is clear that any funds withdrawn from an infant’s estate should be based upon need and carefully drawn so as not to deplete the income thereof and will be subject to annual review by the court.
Accordingly, the court will grant the following:
1. Reimbursement for bonding of the investments on behalf of the children in the amount of $7,273, and any income tax paid by the petitioner attributed solely to the children’s funds;
2. A limited invasion of the interest income only of the children’s funds as follows: $10,000 annually from the funds of Summer Maria Rose Bilick as she is 14 years of age and consents to such invasion, $5,000 annually from the funds of Matthew Levi Enoch Bilick, and $2,500 annually from the funds of Joshua Jeremy Latham Bilick as his resources are substantially less. In addition, the basis of need must be reported to the court annually by the guardian of the infants’ property pursuant to SCPA article 17, §§ 1719, 1720, 1721 and 1722.
Furthermore, under no circumstances should any principal funds of any child be utilized.

. Mrs. Christina Rose Bilick is the sole surviving spouse of the late Gary Bilick, M.D., and is guardian and natural mother of her three wards: Summer Maria Rose Bilick, Matthew Levi Enoch Bilick, and Joshua Jeremy Latham Bilick.

. The annual report provides for $30,090 for Summer, $28,235 for Matthew and $26,885 for Joshua.

. Court-appointed guardian ad litem, Ms. Elissa Y. Killian, Esq. Report filed Feb. 3, 1998.

. The current principal/corpus of the trusts are as follows: Joshua’s $123,000; Matthew’s $517,000; and Summer’s $520,000.

. Again the language is mirrored in Family Court Act § 413 (1) (f).

. Upon residing with Dr. Gary Bilick, the guardian gave up her career in design to bear three children and devote her entire life to the family as head of the household.